Judge Mills
delivered the opinion
The heirs of John Deatly filed their bill in chancery against Zephaniab Murphy and Richard Stiles and others, representing that their ancestor was possessed of a considerable persona! estate, sundry slaves, and a tract of land ; and was, in the year 1812. accused of felony and imprisoned in the jail of Fayette county. That when under confinement his estate was pressed with sundry small executions, and to discharge them, he executed a letter of attorney to said Murphy, authorizing him to sell a negro slave, named Austin, to discharge the debts, and other property if Austin was not sufficient. That pursuant ⅛ the power Murphy sold the slave for about 255 dollars, and paid 200 thereof to the wife of Deatly, who again, on the request of Murphy, restored it to him, and he did not discharge the debts, but represented that he would let the estate, executed, be sold, and be would become the purchaser with the same money, of Deatly, gotten for the negro sold, and thereby secure it to the family of Deatly. That accordingly all the persona! estate was sold, by a sheriff and a constable holding a few small executions, amounting, in the whole, to an inconsiderable sum, and Murphy became the purchaser, and, 3moi>g the rest, of a negro girl named Eliza — That Deatly was a man of weak mind and easily imposed upon, and that Murphy possessed Lis entire confidence, and professed friendship towards him, and exercised a strong influence over him. — That Murphy, together with a certain John Roberts, then bailed Deatly out of jail, and after bis return home to Nicholas county, he,' Deatly, placed in the possession of Murphy, three negro slaves of great value, named Aggy, Nance and Mima— and that at the time Murphy got possession of these slaves, he paid Deatly one half dollar, which Deatly acknowledged to be the last payment for them; but engaged at the time, to restore them, and if he sold them he was to procure other negroes, and convey them over to Death’s family, to wit, to his wife and children, separate from the control of Deatly. — That Murphy having thus got all the personal estate and slaves, under the specious pretext of securing them for the family, Deatly still retained his land to the quantity cf 137 acres, for which hs held a bond on Joba *473 Fowler, executed by Col. Fletcher, bis agent, Stipulating a conveyance. That Murphy then came to the house of Deatly and represented to him that a certain Thomas J. Glass held an execution against Deatly for about nine dollars, and that he (Glass) was about to send the officer to execute and sell the land. That on Deatly’s being alarmed at this intelligence, Murphy informed him how he could avert the evil, by assigning the title bond on Fowler to some confidential friend — and that Deatly accordingly took sine dollars of his own money and furnished it to Murphy, privately, and then before witnesses assigned the title bonds of Fowler to Murphv, who paid him therefor the same nine dollars, acknowledging that to be the last payment for the land. The bill then proceeds to state that Murphy bad sold the personal estate, and all the slaves except the girl Eliza, and had assigned the title bond to the defendant Stites, and procured the agent of Fowler, as stated in an amended bill, to make the conveyance to Stites, who had brought ah ejectment for the land, all which acts of Murphy, happened after Deatly’s death, as to the sale of the property. The bill then makes Murphv, Stites, and Fletcher, defendants, and prays relief against all these transactions.
Murphy, in his answer, admits the sale of the negro Austin, but alledges that he paid the two hundred dollars to Mrs. Deatly and never received it back, and appropriated part of the fifty five dollars to the discharge of Deatly’s debts, and kept the residue in part pay for his trouble and alledges that he bought the personal estate and the slave Eliza with his own money — admits he bailed Dea'ly, and alledges that he bought the three slaves Aggy, Nanee, and Mima, of Deatly, for $500 paid down, and that the title of the negroes was in dispute, and hence they sold so cheap, as he took them entirely at his own risque, and he exhibits a bill of sale for the three, expressing the consideration of $500. He denies an agreement to hold the three slaves last named in trust for Deatly’s children, or any promise to restore them or furnish others in their room. He denies that he represented that Glass had an execution of nine dollars, about to take the land, and declares he had, himself, paid off Glass’s execution long before the assignment of the bond for the land. Contrary to all this he declares that he purchased the land at the price of five hundred dollars, three hundred and twenty of wbiah he paid *474 down to Deatly, and the residue he agreed to pay, and did actually pay to Fowler, being the balance due of the original price, and /or this consideration Deatly assigned to him Fowler’s obligation, and admits the sale to ¿titea and conveyance bv Fowler.
Tho’ a bill should be so drrwnT'as to enable a clianoelior to decree with such tuinlymaj be Win)6" wh re the party was ignorantof his rights^ & may avast ^ himself of any proofs or skmofthe answer.
Stites professes ignorance of the charges in the bill, admits the purchase and part of the payment, and reception of a conveyance, and declares himself an innocent purchaser without notice, altho’ bis conveyance was made, pending the original bill.
Fletcher complains of being made a defendant, and being called upon for a disclosure of the title bond or bonds of Fowler to Deatly which be bad taken in, when he made Ihe conveyance to Stites, as the agent of Fowler, declares he has lost or mislaid them, and cannot produce them.
The circuit court decided against the claim for the personal estate, on the ground that the personal representative had not sued, and against the claim for the slaves on the ground that the remedy of the complainants below was complete at law to recover them or their value. And also against the claim for the land, on the ground that the transfer of the bonds was made to screen the land from Glass’s execution, and of course no relief could be had against such a contract. The bill was accordingly dismissed without prejudice to any suit at law brought for the same cause of complaint, from which decree the heirs of Deatly appealed.
Among the numerous registers of guilt, which courts of justice are frequently compelled to make, but few can be f°un^ °f a color more dark, — a conduct more unfeeling and vile, than that which the proof in this cause discloses against the defendant Murphy. In such circumstances we rausl et!quire whether there are any legal bars in the road recovery, and whether Death,’s conduct was so equally base as that of Murphy, as to prevent his representatives ^rom r!’COVering ¡!1 Ibis suit.
1* ⅛ noticed by the court below, with much justice, that the bill is defective. It is so imperfectly and inartificially drawn, that it does not, nearly, embrace the case as made 0U1 by the answer of Murphy, taken in connection with the proof. Il is a sound rule that a hill ought to contain such charges and allegations as will support the jurisdiction of a court of equity, and warrant the decree of the chancellor upon its allegations. But it is a sound exception to this *475 ruie that many of such charges and allegations may be dis-ptiised w ith where the complainant is ignorant of his rights, and if the answer or proof aids such a case, relief may be granted without regard to the dtfective, and sometimes incorrect statements ofthe bill. Some ofthe heirs of Deatly, and those who have most vigorously prosecuted the suit are infants, who have sued by their next .friend ; all the rest, except one, are femes covert, and are not conversant with the transactions. Under soch circumstances we would reluctantly dismiss a bill for its defects, and we conceive that the present bill, coupled with the proofs, may warrant a decree, if in, other respects the complainants shall be found entitled.
^.^ancetlor as¡je a con> tract of sale ?'a‘le de-⅛” isanrquality oi gmh be-^^"vendee1” but it the 1 * vendee avails !'imsea ot over the mind of a «mfid-induce^im t sell with such * vie,w> quam^of0 ⅜* guilt, & such con’ctwillbe VACated*
As to the land, which is one of the principal objects this suit, we will first respond. It is shewn that Deatly was in fact a weak minded man. That whilst he was enduring the horrors of his piison he was under such alarm that he offered his whole estate to procure bail — that Mur-pby and Roberts bailed him, after Murphy had been tras sacting his business and paying his debts, and that besides the obligations under which Murphy had laid him by becoming his bail, lie possessed an unbounded influence over bins, which he did not fail to urge by reprereritations to the wife of Deatly, that he, Death’, was incompetent to manage his own business, and the family must come to want, if some trusty person, as agent, did not undertake Deatly’s business. Deatly, after l:is liberation from con-fioement, seemed to labor under a confusion of intellect, and some witnesses state that they conceived him measura bly deranged. Under these circumstances he must be not sufficiently independent ol Murphy to exercise the weak understanding be possessed. In this situation Murphy pro cured the assignment ofthe bond of Fowler — and altho’ he denies representing that an execution in favor of Glass, for the small pittance of nihe dollars, would take the land, yet it is inconlrovertibly proved that he did so alarm Deatly into a belief that the execution would take and sell that, which was not the subject ofthe execution. He further denies that he paid nine dollars of Deatly’s own money for the land, yet he did certainly do so, and uot one cent more did he ever pay, altho’ he alledges in his answer that he paid down the sum of three hundred and twenty dollars. Add to all this, that the execution of Glass, on which he rested to alarm Deatly, was, before that time, discharged *476 by bimself, as he declares io his answer. Thus he made use ufan execution which did not exist, and which he had the means of knowing was satisfied out of the money paid as the price of the negro Austin, and of this payment, Deally, trout his confinement, roust be presumed to be wholly ignorant. Can any relief be granted against the contract under thése circumstances ? We recognize the rule récognized by the court below, that equity will not relieve against, or enforce a contract made to defraud creditors or third persons ; not because the defendant has merit in his claim, but barely because he has the attitude of a defendant. In such case the maxim is, in pari delicto melior est conditio defendentis. But this is a case where the party, against whom relief is sought, has fraudulently induced the party craving relief to attempt a fraud, by using his influence — exercising his vast ascendency, arising both from confidence and dependence — making use of dangers not existing, to induce Deatly to dispose of his property, when it was not subject to the execution at all, even if it was not then discharged. In such a case Deatly never could be in pari delicto- Murphy was the origin and insiigator of the crime. Deatly could not be a free agent in doing such a useless act, and so fares he consented, it Was under a belief of a falsehood induced by Murphy. We are unwilling to extend the rule so far as to cover such a fraud, devised and completed by the defendant. It is enough to afford such defendants the protection of the rule, when they are not more guiliy than the complainant. The court of appeals in Virginia, in the case of Winston’s adin’x. against Austin’s ex’x. enforced a contract thade between a debtor and his creditor to defraud other creditors. 1 Henn. and Mum. 33. Allho’ we might hesitate to go as fir as that case has gone in decreeing the benefit of a contract, yet we cannot in this case, which is much strong<r, reiuse to set the contract aside.
A purchaser éf pioeeny, tliu . quir erl. ho’ .n nocent bint-s' ;i, yet if be receive m the title ¡.fir sue bro’’ :o Cor ect ti e fraud, wi t tic be protected.
As to the defendant Stiles, altho’he claims to be an innocent purchaser, yet his conveyance was taken pendente lite, and it does not appear that he had yet paid the whole consideration. The contract, therefore, between Deatly and Murphy, as to the land, musí be set aside, aud Stites be decreed to convey the title to the heirs of Deally. An account must also be taken of the rents, profits and was'e, since the death of Deatly, received or committed bv Murphy ⅜ until otiles took the possession, and then against *477 Stites during the time he has held the farm, and also of the money paid or secured by Murphy to Fowler, as balance ot the original price, and the balance he decreed against whomsoever it is found, and the possession of the land must be restored to Deatly’s heirs.
a person purchasing at| ¿ fylncjs 0p tiie d- btoy, is a trastee,
Tho* chance,*y Wl11 9eI-f^nn-act;06 for personal wierea trust ere ted & ex’e of a ^gg^no¡ party. 6 ⅛
The complaint with regard to the negro slave Eliza, and the personal property purchased at the sales of the sheriff and consiable, stands on an entirely diff reot footing.— Here no invention to deprive creditors oí their rights is pretended by either side or shewn in proof. Deatly, at the time, was in confinement and appears not to have been privy to it : tho’ afitr his liberation, placing confidence in Murphy, be approved of the arrangement, in this the answer of Murphy is also completely overturned It is shewn by express proof, strongly corroborated, that he received back the two hundred dollars from Mrs. Deatly and stood by at the sales and became tiie purchaser with Deatly’s money. It seems to hare been an arrangement entirely designed to place (he title of the property in Mui-phy, as the agent and trustee for the use and benefit of the appellants, Washington & Porter Deatly. It was then nothing mere than placing the property in his hands, and the purchase with Deatly’s own money could not add to it greater validity. In other words, it was a gift for the benefit of these appellants. As to the negro girl Eliza, it is in proof that Mbrphy never took her into possession lor the benefit of Washington and Porter Deatly, but left her in the possession of Deatly, where she remained till bis death, and she hasever since remained wilh his family. Putting the pretended sale out of the question, it is evident that such a gift ofasiave, under the 4 1 sec. of the act, entitled “an act to reduce into one the several acts respecting slaves, free negroes, mulatioes and Indians,” 2 Pitt. 113, could pass no title to the appellants, \V <⅝ P Deatly, or yet in the trustee fui them, and she remained still the property of Deatly till his death.
But as to the personal estate, it was competent for Deally to make a gift ol it by parol only, and to place it in tiie bands of Murphy as a trustee for his iwo children named. Assuming this to be the fact it was not utcessa-ry, as the circuit court suppossd, for the personal seniafive to be a party to recover it. The cestui que use is entithd lo the remedy. Aiíd aitho’ a court ol chancery wili but seldom sustain a Dili for the specific execution of a *478 contract respecting a chattel, jet where a trust is concern* cd, which is a subject pteuliar to such court, it will interfere and relit ve when the trust is ended, or hkelj to be abused In this esse the appellee, Murphy, has denied the trust and insists on his right to the estate. Most of these chatties remain in possession of the family ; hut some of then» do not. Murphy must be decreed to release his claim thereto to Wash, and Por. Deatly, and decreed to account to them for such articles as he has disposed ot and titty have nol the possession of.
The acknow-lodgment of mioiTorfa bill of sale, may bemade '"ence of stipulations eniered into dee does not ’perse prove the payment of t c pnce.
The case ol U re< negroes, Aggy, Nance and Mima, presents mere difficulty. Will) regard to them, neither the allegations of the b>!i, or the answer of Murphy, or the prcoi in the cause, sheds so clear a light, as on other matters in contest. Certain it is, there is some mystery in the transaction. Muiphy, alter his having bailed Deatly, returns home to'Nicholas County, and then prepares Mrs. Deatly for a separation from It tst slaves by telling her that they were to be placed in his hands as indemnity, il Deat-iy steuld not stand his trial, ¡shortly after the arrival of Peatly, be comes to his house ai d gets these slaves, having previously gotten a bill of salt h r them De declares that be purchased them fo* the sum of five hundred dollars paid down, and his bill of sale, expresses that consideration, w hen, if the parol evidence is admissible, he then paid bul one half dollar, and even i.is ow n son, introduced by him to prove the payment, states ¿hat he saw money paid, but will not say bow much, and concurs wnh the rest of the witnesses in swearing that Deatly declared it was the last payment for the negroes.
The difficulty arising iu this part of the case is caused by the bill ot sale produced by Murphy, the terms and cou-«¡deration of which, as it is wntteu, furnish evidence of a higher nature than verbal proof. But such a consideration expressed in a writing, may be shewn to be composed of other things beside mon»y, the price or value of winch things might have been agreed by the parlies lo stand as s0 much money, as was decided by ’.¡vis court in the case Carneal’s heirs vs. May, &c. Fall Term, 1820. The acknowledgment of pay meni, made in such an instrument, may be shewn to mean the securing ol it, by the vendee, by'Slipula!ions 0n his pari. -
- t e<innot doubt, in this case, that the real consideration intended by Deatly, was the obligations of Murphy, *479 undertaken to the commonwealth as bail for Deatly, which obligations he might have been compelled to fulfil, on the contingency of Deatly’s avoiding his trial. This contingency never did happen, and by the death of Deatly, or from some other cause, Murphy appears in no 'danger of suffering Giving then this transaction the most favorable construction, Murphy ought to be compelled to.repáre-the slaves to Deatly’s estate. But another answer may be • . i • i -n c i . i i- • . given to this bill ot sale, more strong and availing against Murphy. The situation ofthe parties, as before observed, in a contest in ehancery- — the cunning and shrewdness of one, and imbecility and incapacity, as well as inexpertence, ofthe other — the illimitable ascendency and irtfluence of the vendee over the vendor — coupled with the unbounded confide ce of the latter in the former, and also with great inadequacy of priee, are facts and circumstances which authorize the presumptions of fraud in many cases, In this class the so strongly, .that no contract can stand. ... ....o .■» cases of embarrassment of the vendor, taken advantage of by the vendee — catching bargains, where a guardian or even an insidious individual ensnares a ward or an heir into a ruinous contract, are placed. Nswland on Con. 362 to 368 and cases there cited. In no case could the coni ilion and circumstances of the different parties to a contract, contrasted with each other, have a stronger bearing than in the present controversy. The free agency of Deatly was destroyed, and the door was fuiiv opened to the dark and nefarious designs of Murphy. Under such circumstances the contract ought not to be allowed to stand; nor ought the expression of a consideration to estop the heirs of Di atly from enquiring into and impeaching it. If it is to he impeached, no'doubt can re-t main that one half dollar was II that was paid for these three slaves, and that, accompanied with the declaration that it was the last payment, was intended to cover up the base designs of ihe vendee, and to place the property in his hands lor his own benefit.
A. bill of sale curity, sho’d be cancelled anct.’■he Pr0‘ perty restor-édonthe ce’sing-ofthe Iwbilhty.
A pretenied purchaser, holding in-thsfmind^fa weak&cred«\ous man, will not be at an inadequate price. perm-!tte(j to. enjoy a contract gain’d
their own name> alpne' An ex’r may assent to U’rs bringing suit for slaves iri
Nor do we conceive that the personal representative not being a party furnishes a bar to the relief sought. The widow oí Deatly, who administered on his estate, consi dered the settlement of these slaves in the hands of Murphy to he obligatory upon her, and to it she readilv assented, until Murphy began tq shew intentions of abusing the supposed trust, iihe never claimed the slaves as part of the *480 estate, on which she ought to administer, and after the controversy arose she relinquished her right to the estate t* appear as a witness. From these circumstances and also from others which need not be detailed, her assent to the taking of the heirs and to their right to sue may be presumed. No doubt is entertained that with such assent the heirs may sue, and their suit in this instance was rightfully brought. Some doubts were at first entertained whether these three slaves ought to be decreed to Washington & Porter Deatly alone or to the heirs general. But the parol declarations of Murphy, we conceive too weak in this instance to cause the slaves to pass to the two heirs only.— Besides, we have no donbt that these declarations were made to cover the fraud, and as the contract is tobe entirely vacated and not specifically enforced, we conceive that the slaves ought to be decreed to all the heirs, hereafter to abide the laws of the land in any question of division between themselves. The defendant, Murphy, ought to be decreed to restore these slaves, if to be bad, if not, their present value in damages, and to be compelled, by proper assessment made by a jury or commissioners, to account for them and their reasonable hire from the time be got them until the date of the decree And after Murphy shall render an aecount of the price of Austin and the forty dollars collected by him in discharging Deatly’s debts, Or otherwise, he is to be allowed a reasonable compensation for bis valuable services rendered to Deatlv and his family, and to be allowed him as credits in the account to be taken.
The decree must be reversed with costs and the cause remanded for nevf proceedings accordant to this opinion, as to the defendants Murphy and Stites. But as to Fletcher, the decree is affirmed without costs in his favqr as in this court he made default.